# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

VALERIIA BORISOVA,

Petitioner,

v.

MARKWAYNE MULLIN, ET AL.,

Respondents.

Case No. 5:26-cv-04156-MAR

**ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.
## INTRODUCTION

On July 24, 2026, Petitioner Valeriia Borisova. (A# 206-531-405) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging her detention in immigration custody. Dkt. 1, ("Pet."). On July 31, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd Blanche, Acting Attorney General of the United States, David Venturella, Acting Director of Untied States Enforcement and Removal Operations ("ERO"), Ernesto Santacruz, Jr, Acting Field Office Director of Los Angeles ICE Field Office, and Warden or Facility Administrator, Adelanto ICE Processing Center (collectively, "Respondents") filed an

Answer to the Petition (the "Answer"). Dkt. 13. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

**II.**

**FACTUAL BACKGROUND**[1]

Petitioner is a citizen of Russia. Pet. at 8. Petitioner entered the United States lawfully on a J-1 nonimmigrant visa in or about May 2013 and has remained physically present ever since. Id. at 9. In January 2014, Petitioner affirmatively filed an application for asylum. Id. at 10. Her case was later referred to the Immigration Court on a Notice to Appear dated November 16, 2017. Id.; Exhibit 4, Prior Notice to Appear. On September 16, 2022, the Immigration Judge in Los Angeles Immigration Court terminated Petitioner's removal proceedings without prejudice. Id. There was no opposition from DHS to the termination, and no appeal was taken. Id.; Exhibit 1, Order Terminating Proceedings. Since that termination order, Petitioner has continued to live openly in Los Angeles County. Id.

Petitioner is a longtime Los Angeles resident, a licensed permanent makeup artist, and the owner and operator of a permanent makeup studio in Brentwood, where she provides services to clients on a regular basis. Id.; Exhibit 12. Petitioner is divorced and shares custody of her two United States citizen children with their father. Id. In practice, Petitioner is the children's primary caregiver and principal financial supporter. Id. She also supports her mother, who lives with her, and is responsible for paying household rent, utilities, car payments, insurance, the children's educational and

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so unless noted herein. Dkt. 8. Therefore, the Court considers the following undisputed facts to be and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

medical expenses, office rent for her business, and other business-related expenses. Id.; Exhibits 9, 10, 11. Petitioner has deep roots in her community. Id. at 11. She volunteers at social events, regularly makes donations in support of Ukraine, and is well known in the local Russian-speaking community. Id. Petitioner has no criminal history, no history of absconding from immigration proceedings, and no history of failing to appear when required. Id.; Exhibits 11, Letters in Support. Petitioner has lived openly in the United States for more than thirteen years, maintaining a residence, operating her business, and caring for her children and mother without attempting to conceal herself from authorities or flee the country. Id.; Exhibit 7, Proof of Residence; Exhibit 9, Children's Documents. Petitioner also traveled domestically on a regular basis, including travel between Los Angeles and San Francisco, consistent with her normal personal and professional life. Id.; Exhibit 8, Travel History.

On July 17, 2026, Petitioner was at LAX preparing to board a domestic flight to San Francisco. Id. As she was boarding, she was approached by several non-uniformed ICE officers. Id. Without first introducing themselves, the officers called Petitioner by name and asked whether she knew "Kiril Romanov." Id. Petitioner asked who they were. Id. The officers displayed ICE badges and asked whether Mr. Romanov was her husband. Id. Petitioner answered that he was her former husband and that they were divorced. Id. at 12. The officers then asked where her children were; Petitioner responded that they were at daycare. Id. The officers then told Petitioner to come with them. Id. When Petitioner asked for the reason, the officers responded, "because you overstayed your visa." Id. The officers did not present a judicial warrant or an administrative warrant, did not provide any arrest paperwork, did not identify any pending immigration case, and did not serve Petitioner with a new Notice to Appear. Id. ICE transported Petitioner to the federal building at 300 North Los Angeles Street and later that day transferred her to the Adelanto ICE Processing Center, where she remains detained. Id.

At the time of arrest, Petitioner was not in pending removal proceedings because

her prior case had already been terminated in September 2022. Id. No new Notice to Appear had been issued or served before the arrest. Id. Despite repeated requests from counsel, Respondents did not produce a Form I-213, an I-200 warrant, a new NTA, or any other contemporaneous documentation establishing the statutory basis for Petitioner's arrest and detention until several days after Petitioner was taken into custody. Id. A Notice to Appear was ultimately filed on the Executive Office for Immigration Review's electronic case access system ("ECAS") on July 23, 2026 — six days after Petitioner's arrest at LAX. Id. The NTA bears a stated issuance date of July 17, 2026, the same date as Petitioner's arrest, but it did not appear on ECAS as of July 22, 2026. Id. Petitioner was not served with, presented, or made aware of any Notice to Appear at the time of her arrest, nor at any point during the six days that followed. Id. at 12–13; Exhibit 2, NTA. There is no indication that Petitioner received a custody determination.

Petitioner's detention has separated her from her two United States citizen children, deprived her of the ability to care for her mother, and disrupted the operation of her Brentwood studio and her ability to meet her family's and business's financial obligations. Id.; Exhibit 10, Statement of Grandmother. Petitioner's detention also impairs her ability to prepare and pursue asylum and cancellation of removal. Id. Over the weekend following her detention, Petitioner reportedly suffered a head injury in custody after contact with a sharp object and was given only Tylenol. Id.

**III.**

**SUMMARY OF PETITIONER'S CLAIMS**

Petitioner's first claim for relief is that Respondents lacked statutory authority to arrest her because Congress authorized detention under § 1226 only in connection with pending removal proceedings initiated by a charging document, but at the time of her arrest, no removal proceedings were pending against her, and no Notice to Appear had been served on or made available to her. Pet. at 18. Petitioner's second claim for relief is that Respondents had no authority to arrest Plaintiff without an arrest warrant

because Section 1357(a)(2) authorizes warrantless civil immigration arrests only where the officer has reason to believe the person is unlawfully present and is "likely to escape before a warrant can be obtained" and the record contains no supporting facts that the warrantless arrest exception applies. Pet. at 19. Petitioner's third claim for relief is violation of her Fifth Amendment Right to Due Process. Pet. at 20.

Petitioner seeks immediate release from custody and an order enjoining Respondents from re-detaining her absent a validly issued and served warrant or Notice to Appear consistent with 8 U.S.C. § 1226 and 8 C.F.R. § 1236.1(b), or an individualized escape-risk determination consistent with 8 U.S.C. § 1357(a)(2). Id. at 21. Respondents argue that Petitioner's due process claim fails. Answer at 2–4.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133

F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind,

courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

**V.**

**ANALYSIS**

As an initial matter, it is undisputed that Petitioner has resided in the United States since 2014 and has two United States citizen children. Pet. at 9–12. It is further undisputed that Petitioner has no criminal history and that her removal proceedings were previously dismissed. Id.; Answer at 2. It is undisputed that Petitioner has applied for asylum. Id. Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time she lived in the United States, the ties she built to the community over the past 12 years, and the fact that the government affirmatively chose not to detain Petitioner when she filed an asylum application. See id. at 10–11; see Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place [when she filed an asylum application and lived in the United States for 13 years]; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); see, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their

liberty.”). This “liberty is valuable and must be seen as within the protection of the [Due Process Clause].” Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner’s arrest without a pre-deprivation hearing violated Petitioner’s procedural due process rights.[2] See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (“On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.” (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) (“Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing.”), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given the violation of Petitioner’s due process rights, the Court concludes that “Petitioner’s release is necessary to return [her] to the status quo.” Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is “the last uncontested status which preceded the pending controversy.” GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner’s release from custody. See Nazarian, 2025 WL 3236209, at *7 (“The last uncontested status in this case is Petitioner’s release on his second OSUP before his current re-detention.”). “Accordingly, Petitioner’s release from custody is the appropriate remedy.”[3] Id.

---

2 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Mathews factor. Under the second Mathews factor, the risk of erroneous deprivation is high because there has been no determination of Petitioner’s danger or flight risk and because Petitioner was arrested without the service of a warrant or showing of exigent circumstances. Finally, under the third Mathews factor, the Government’s interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

3 The Court also notes that several courts in this district have found that a warrantless arrest without

(cont’d . . .)

The fact that Petitioner could potentially receive a post-deprivation bond hearing does not remedy the violation of Petitioner's procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom.

---

any showing of circumstances that Petitioner is "likely to escape before a warrant can be obtained" is an independent basis for release. See ALBERTO PERDOMO RIVERA, Petitioner, v. MARKWAYNE MULLIN, et al., Respondents. Additional Party Names: Dep't of Homeland Sec., Immigr. & Customs Enf't, No. 5:26-CV-04197-KES, 2026 WL 2276935 (C.D. Cal. Aug. 6, 2026); Petrashkevich v. Mullin, No. 5:26-CV-04223-PD, 2026 WL 2337897 (C.D. Cal. Aug. 12, 2026).

Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of the INA and his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they

seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees under the EAJA. Pet. at 22. The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

Based on the foregoing, the Court **GRANTS** the Petition as follows. Respondents shall immediately release Petitioner **Valeriia Borisova (A# 206-531-405)** ("Petitioner") from custody (subject only to conditions that were in place prior to her detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226

---

4 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance within forty-eight hours.

IT IS SO ORDERED.

DATED: September 11, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE